**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CHARLES R. HENDRICKS,**<br>**5505 Kirkwood Drive**<br>**Concord CA 94521-1606**<br><br>             **Plaintiff,**<br><br>      **v.**<br><br>**TOM VILSACK,**<br>**U.S. Secretary of Agriculture,**<br>**c/o Office of General Counsel**<br>**1400 Independence Avenue, SW**<br>**Washington, DC 20250**<br><br>             **Defendant.** | **Case No.** |

## **COMPLAINT**

1.    Plaintiff Dr. Charles "Chuck" R. Hendricks ("Plaintiff" or "Hendricks"), brings this action against Defendant, Tom Vilsack, the U.S. Secretary of Agriculture (the "USDA" or "Agency"), alleging discrimination and reprisal in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-16, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 633a, et seq.

2.    Dr. Hendricks is a Caucasian man over 60 years of age who has worked for the U.S. Department of Agriculture since July 16, 1991. He is currently a Supervisory IT Specialist, GS-14, working for the Agency's Food and Nutrition Service (FNS) in San Francisco, California. He commenced a complaint of discrimination in 2004 alleging that discrimination was blocking his career advancement; that claim was amicably resolved. On December 9, 2016, he learned that he was not selected for a Supervisory Technology Specialist, GS-15, position.

1

The Agency selected two individuals whose qualifications were significantly inferior Dr. Hendrick's. Plaintiff alleges his non-selection was discriminatory because of his race, gender and age.

3.    In 2018, after Dr. Hendricks engaged in discovery as part of his EEOC hearing process, the Agency issued him a "Letter of Caution," a lowered performance rating, a "Letter of Reprimand," assigned as excessive amount of work, set an unreasonable deadline, deviated from normal practices in assigning work to his subordinate, and instructed him not to share information about his prior EEO complaint. Plaintiff alleges that these actions are retaliatory. He seeks retroactive instatement into the promotion for which he was the best qualified applicant and relief for the subsequent retaliation.

## Jurisdiction and Venue

4.    This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 16(c), and 29 U.S.C. § 633a(c).

5.    The U.S. Department of Agriculture is headquartered in Washington, DC, where its official records of employing Dr. Hendricks are maintained. Thus, venue properly lies before this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e). Venue in this district is also proper under 42 U.S.C. § 2000e-5(f)(3).

## Parties

6.    Plaintiff is a resident of California and he has been an employee of the USDA since July 16, 1991. He is currently a Supervisory IT Specialist, GS-14, working for the FNS in San Francisco, California.  Plaintiff is a Caucasian male over 60 years of age.

7.    Tom Vilsack is the Secretary of Agriculture of the United States. He is sued here in his official capacity.

**Facts**

*Plaintiff's Administrative Exhaustion*

8.       On January 5, 2017, within 45 days of learning of his non-selection for promotion, Dr. Hendricks contacted the Agency's Equal Employment Opportunity ("EEO") office to initiate an informal EEO complaint alleging discrimination in violation of Title VII and the ADEA.  Plaintiff's contact with the EEO office was timely. 29 C.F.R. § 1614.105(a)(1).

9.       On February 6, 2017, Dr. Hendricks timely filed a formal EEO complaint alleging that he was subjected to discrimination based on sex, race and age.

10.       On or about July 17, 2017, Hendricks requested that his claims be heard at a hearing presided over by an EEOC Administrative Judge.

11.       On October 30, 2018, Hendricks contacted the Agency's EEO office again to commence another proceeding, this time alleging reprisal in violation of Title VII and the ADEA.

12.       On December 12, 2018, Hendricks filed a formal EEO complaint alleging that he was subjected to discrimination and reprisal based on sex, race and protected activity. He subsequently amended the complaint to include additional allegations of discrimination and retaliation.

13.       On or about June 26, 2019, Hendricks requested that his additional claims be heard by an EEOC Administrative Judge.

14.       On February 14 and March 3, 2022, Plaintiff's counsel received the EEOC's final decisions denying reconsideration.

15.       This action is timely filed within 90 days of Plaintiff's receipt of the EEOC's final decisions. 42 U.S.C. § 2000e–16(c) and 29 U.S.C. § 633a(c); *Price v. Greenspan*, 374 F.Supp.2d

3

177, 186 (D.D.C. 2005) (Lamberth, J.) ("Most circuits hold that when a federal employee pursues an age discrimination claim through the administrative process, that employee faces the 90-day statute of limitations set forth in Title VII, because Title VII offers the most analogous statutory regime and limitations period.").

### *Hendricks's Education and Prior Experience*

16.    Before working for the Defendant, Dr. Hendricks spent more than five years as a computer specialist and supervisor in the United States Navy.

17.    Dr. Hendricks also has nine years of experience working in information technology in the private sector.

18.    Dr. Hendricks has earned a Doctorate in Business Administration with a focus on Information Technology; his dissertation concerned technology acceptance. He holds three masters degrees: in Information Systems, Systems Engineering; in Public Administration; and in Business Administration.

19.    Dr. Hendricks has taught computer systems courses in the California State University system.

20.    Dr. Hendricks has taken three leadership courses through Center of Creative Leadership. The three courses are "Maximizing Your Leadership Potential," "Leading Teams for Impact" and "Leading Strategically."

21.    Dr. Hendricks is a certified Speed of Trust facilitator, a helpful skill for engagement and collaboration.  Dr. Hendricks is a member of the Western Regional Engagement Team and the National OIT Engagement Team.

### *Hendricks's employment*

22.    Dr. Hendricks has worked for the Defendant since July 16, 1991.

23.    In October 2011, the Defendant promoted Dr. Hendricks to the position of Branch Chief in the FNS Office of Information Technology (OIT). Dr. Hendricks served as Branch Chief, GS-14, of the Operation and Maintenance Branch, one of the three branches within the Portfolio Management Division ("PMD") in OIT.

24.    From October 2011 through July 2016, Dr. Hendricks' performance was uniformly rated as "Superior" in each of his performance elements including "OIT Competencies," "Communications and Collaborations" and "Leadership/Management, Supervision."

25.    From July 10 to September 3, 2016, the Defendant temporarily assigned Dr. Hendricks to the PMD Director position, a GS-15 position. During this time, his first-line supervisor was Kimberly Jackson, who rated Dr. Hendricks as outstanding and specifically praised his performance as Acting PMD Director.

26.    Dr. Hendricks has over 25 years of direct federal management experience in USDA and FNS managing information technology professionals.

27.    Dr. Hendricks has 35 years of experience in the information technology field, including management of information technology projects, procurement, professional development, security, facilities management, project management and building and maintaining working relationships. Dr. Hendricks has worked in areas of OIT including Telecommunications, Network and Engineering, Customer Service, Application Development, Project Management and Operations and Maintenance.

### *FNS OIT Selects Supervisory GS-15 Positions*

28.    On October 7, 2016, Dr. Hendricks applied for two Supervisor Information Technology Specialist positions advertised in a single vacancy announcement. One of these

positions had been vacated; the other position was a new position – Director, Program Management Division. This second position did not previously exist and required the Defendant to make a revision to the OIT organizational structure. Such changes are governed by Agency Departmental Regulation 1010-001 which stated:

> Changes in Organization: Changes in organizational structure at the level of a division or higher requires a 1010 package for the Under Secretary's approval. A change would include the elimination or addition of a division or higher in headquarters.

Ignoring this requirement, Dr. Hendricks' managers did not submit or seek approval of the change as required by the Defendant's regulation.

29.     Despite Dr. Hendricks' extensive experience and superior skills, the selecting official, Ms. Jackson, selected Kristin Ruiz (Caucasian female, age 38) for the GS-15 PMD Director position. Ms. Ruiz joined the Agency in January 2016, less than a year before her selection, as a Federal IT Program Manager at the GS-14 level in the OIT Program Management Branch.  Ms. Jackson also selected Vance Parker (African American male, age 55) to lead initiatives in Program Management and create a single point of entry for all IT projects. Ms. Jackson assigned Mr. Parker to provide leadership to the Program Management Branch and serve as the Division Director for PMB.

30.     Defendant announced Ms. Jackson's selections for the GS-15 positions and Dr. Hendricks learned of them on or about December 9, 2016.

31.     The Agency's vacancy announcement stated, "You must have one year of experience at a level of difficulty and responsibility equivalent to the GS-14 grade level in the Federal Service."

a.  Dr. Hendricks had 5 years at the GS-14 grade level, Ms. Ruiz had only 1 month (acting) of federal management experience equivalent to the GS-14 level and Mr.

Parker only had 10 months (acting) of federal management experience equivalent to the GS-14 level.

b. Dr. Hendricks had 25 years of direct federal management experience in USDA/FNS managing information technology professionals and Ms. Ruiz had less than 1 year in FNS, Defendant did not select Dr. Hendricks.

c. Three months earlier, Ms. Jackson had rated Dr. Hendricks' performance as Acting PMD Director "outstanding." Ms. Ruiz had not previously acted as the PMD Director.

32. The Defendant designated the position as "Supervisory Information Technology Specialist." Dr. Hendricks supervised six direct reports, but neither Mr. Parker nor Ms. Ruiz supervised Information Technology Specialists on a permanent basis.

33. Dr. Hendricks had 25 years of experience in the Agency's Food and Nutrition Service. According to Ms. Jackson's "Welcome Aboard" email, Ms. Ruiz had no prior experience in food programs.

34. Ms. Ruiz has a bachelor's degree and no advanced degrees.

35. The positions required a FAC-COR (Contracting Officer's Representative) level III certification. Rules and regulations applicable to the Agency require that an employee have two years of experience as a COR, along with meeting other training requirements, to receive FAC-COR III certification. Ms. Jackson certified Ms. Ruiz as a FAC-COR level III in July 2016, even though Ms. Ruiz did not have two years of experience as a federal COR, in contravention of the Defendant's rules and regulations and normal practices. Dr. Hendricks possessed this certification.

36.    Defendant relied on vague, subjective and conclusory justifications for not selecting Dr. Hendricks.

a.  Ms. Sonja Farrell, a member of the interview panel, stated, "I believe the selectee's skills, knowledge and experience in workforce management, influencing and negotiating, customer service, innovation and conflict management identified them as more qualified."

b.  Panel member Joseph Binns stated, "I do not recall interviewing [Dr. Hendricks]. The selectee definitely showed mastery of IT theories, principles, concepts, standards and practices based on the questions asked during the interview." When asked if the selectees were more qualified than Dr. Hendricks, Mr. Binns remained unable to provide particulars, saying, "Since I do not recall interviewing the complainant, I cannot answer this question. However if [Dr. Hendricks] was more qualified than this person, then [he] would have definitely been referred."

c.  Ms. Jackson also relied on vague, subjective and conclusory assessment saying, "I strongly considered the recommendation results of the interview panel members in my selection decision.  I adamantly believe that the experience of the diverse panel members generated an objective evaluation of the top candidates.  My subsequent interview with the top candidates further confirmed the interview panel's assessment."

d.  Mr. Ward, the third panel member and someone for whom Ms. Ruiz directly worked, stated he was looking at "leadership and vision."

e.  As did Mr. Ward, Ms. Jackson cited Dr. Hendricks' responses regarding leadership as a basis for her decision. She stated:

8

> One example is when Mr. Hendricks was asked to speak to how he would work and build a collaborative environment with OIT, FNS, and Department leadership separately; he spoke to the three areas collectively. The Top 2 candidates spoke to each leadership population separately and provided examples of prior collaboration efforts from their work history. This demonstrated to me that the Top 2 candidates recognized that the three populations require a varying approach to collaboration.

f. The reliance on Dr. Hendrick's leadership responses violated USDA Regulation 4030-335-002, Appendix B, "Developing Evaluation Criteria for Merit Promotion," which prohibits consideration of processes or traits such as "leadership."

37. Kimberly Aguilar, the Agency's HR service provider, stated that verifying the accuracy of the content of an applicant's resume or application was the responsibility of the interview panel and selecting official.

38. Panel member Sonja Farrell denied that she and the other panel members were to investigate whether information on the applicants' resumes was true and accurate.

39. Section 10(g)(4) of Agency policy entitled "Requirements for Convening a Merit Promotion Panel" provides that, "The selecting official is to request that a Civil Rights (CR) staff member serve as member of the Merit Promotion Panel."

40. The Agency failed to comply with this Section 10(g)(4) for the Promotion Panel for which Dr. Hendricks was not selected to either available position.

41. After selecting Ms. Ruiz and Mr. Parker for positions for which they were less qualified than Dr. Hendricks, Ms. Jackson changed those positions to accommodate the people she selected. Ms. Ruiz became the PMD Director/ Enterprise Architect and Mr. Parker received a new position with PMB, and is leading a new division, the program management division, which was never officially announced.

### *Ruiz Subjects Hendricks to Retaliation*

42.    In her new GS-15 position, Ms. Ruiz became the immediate supervisor of Dr. Hendricks.

43.    On January 5, 2017, Dr. Hendricks initiated his informal EEO complaint, and on February 6, 2017, he filed his formal complaint with the Agency's EEO office alleging that the selections were discriminatory.

44.    On **** 2017, Ms. Ruiz gave Dr. Hendricks a performance rating of "outstanding."

45.    Dr. Hendricks' work performance did not change significantly between 2017 and 2018.

46.    During her March 12, 2018, deposition in the administrative portion of this case, Ms. Ruiz testified that she told Dr. Hendricks: "please do not bring up legal action or threaten me in regards to your ongoing EEO case again."

47.    On [DATE], Ms. Ruiz added a large and complicated task to Dr. Hendricks' workload, set an unreasonable deadline, changed it from an "exceeds" item to a mandatory item in his performance plan, and later downgraded his performance rating when – she claimed – the task had not been performed to her satisfaction. When Dr. Hendricks complained that these actions were unlawful retaliation, Ms. Ruiz reiterated her direction that he not mention the EEO case and accused him of yelling.

48.    One of the tasks in Dr. Hendricks' performance plan required that he develop an initial strategy to reduce sustainment operations across the FNS portfolio. The task was such that, if successfully performed, Dr. Hendricks would receive a rating of "exceeds". On August 9, 2018, however, Ms. Ruiz gave Dr. Hendricks just one month to complete the task and changed it

to be a required (rather than an "exceeds") task. Dr. Hendricks was able to complete this task, but not until two days after the deadline because a colleague failed to provide him with necessary information.

49.    On September 21, 2018. Ms. Ruiz issued to Dr. Hendricks a Letter of Concern.

    a.    The Letter of Concern faulted Dr. Hendricks for showing a "passive aggressive attitude."

    b.    The Letter of Concern faulted Dr. Hendricks for announcing plans to leave his position without first informing Ms. Ruiz. The record contains no requirement that Dr. Hendricks notify Ms. Ruiz before disclosing his plans to anyone else.

    c.    The Letter of Concern states that Dr. Hendricks was late in informing Ms. Ruiz that he would not be able to complete the initial strategy to reduce sustainment operations because a colleague had not provided him with necessary information. *See* ¶ 48, above. The record contains no evidence that Ms. Ruiz had ever notified Dr. Hendricks of any deadline for providing this information to her.

    d.    The Letter of Concern   also questions why Dr. Hendricks did not request an extension of time for a contractor earlier in the year. The contractor did not inform Dr. Hendricks of the need for this extension until September 6, 2018. Defendant's Contractor Representative conferred with Dr. Hendricks on September 20, 2018, about the extension, and Dr. Hendricks submitted the extension request on September 20, 2018, at 9:03 pm. Dr. Hendricks did not delay processing of this request.

11

50.     During telephone calls in September and October 2018, Ms. Ruiz informed Dr. Hendricks that she would be giving him lowered performance rating. Dr. Hendricks told her he believed this performance rating was made in retaliation for his participation in this EEO case.

51.     On October 12, 2018, Dr. Hendricks provided Ms. Ruiz with 21 pages of details supporting a higher rating. Ms. Ruiz refused to consider these details, claiming incorrectly that Dr. Hendricks had failed to "map" (i.e., correlate) them to his performance plan. That assertion is objectively false: Dr. Hendricks clearly labeled each section with headings that linked his performance to the performance standards and explained how his performance met the requirements for an outstanding rating.

52.     On October 22, 2018, Ms. Ruiz informed Dr. Hendricks that she was rating his performance that year as "fully successful," rather than the "outstanding" rating she issued to him in 2017.

53.     Ms. Ruiz gave LaVette Sydnor (African American female), Bill Revells (African American male) and Veronica Brown (Latina female) higher performance ratings although their accomplishments were inferior to Dr. Hendricks'. Specifically, Ms. Snydor and Mr. Revells received "Outstanding" ratings and Ms. Brown received a "Superior" rating. Ms. Ruiz gave the two other senior Caucasian males in the office, John Coulter and Ed Band ,ratings of "Fully Successful."

54.     The Agency's normal practice is for the immediate supervisor's rating to be reviewed and signed by the reviewer's supervisor (reviewing official).

55.     In 2018, the reviewing official, Ms. Jackson, signed Dr. Hendricks' performance rating on "2018.10.16" – six days *before* Ms. Ruiz signed it on "2018.10.22."

56.     The Defendant's assertion notwithstanding, the record contains no evidence of a change – or of approval for such a change -- in the requirements to document higher performance ratings.

57.     On November 2, 2018, Ms. Ruiz issued Dr. Hendricks a Letter of Reprimand.

a.  The Reprimand asserts that Dr. Hendricks "threatened that [he] would file a retaliation complaint[.]" The Reprimand also references that Dr. Hendricks stated that he could use discovery – part of the administratie processing of his EEO complaint – to find emails showing interference in his rating by other OIT senior leaders.

b.  The Reprimand falsely claims that on September 27, 2018, Dr. Hendricks "also proceeded to talk over me and threaten me with legal action regarding a Letter of Concern I issued to you on September 21, 2018[.]"

c.  The Reprimand falsely states that Dr. Hendricks used an "aggressive tone" and "raised" voice during their September 27, 2018, telephone call. In fact, Ms. Ruiz had no one-on-one teleconference meeting on September 27, 2018, at all because Ms. Ruiz canceled her meetings with PMD staff and her one-on-one meeting with Dr. Hendricks because of critical end of the year actions they needed to complete. The record includes Dr. Hendricks' telephone records confirming that he and Ms. Ruiz had no teleconference on September 27, 2018.

d.  Dr. Hendricks did not bring up the Letter of Concern to Ms. Ruiz at any other time.

e.  The Reprimand falsely states that Dr. Hendricks engaged in "intemperate behavior" in discussions with Ms. Ruiz.

13

f.  The Reprimand falsely claims that on October 1, 2018, Ms. Ruiz informed Dr. Hendricks by phone that if he had more information that he could provide that was mapped to his performance plan, he should send it to Ms. Ruiz.  In fact, Ms. Ruiz had no call with Dr. Hendricks on October 1, 2018. The record includes Dr. Hendricks' telephone records, confirming that he and Ms. Ruiz had no teleconference on October 1, 2018.

58.  Ms. Ruiz subjected Dr. Hendricks to adverse assignments, unreasonable deadlines, elevated performance requirements, close supervision and threatening with disciplinary letters because she was upset about his pursuit of this EEO case.

59.  In the Agency's investigation of Dr. Hendricks' complaint of retaliation, Ms. Ruiz failed to submit a signed statement. Even the unsigned statement she submitted contained no response to Questions 31-90.

60.  Ms. Ruiz's hostile treatment of Dr. Hendricks as described above would discourage reasonable employees from engaging in protected activities.

61.  Dr. Hendricks suffered humiliation, emotional distress, loss of enjoyment of life and loss of professional reputation as a direct and proximate result of the adverse actions alleged in this complaint.

## COUNT I – Discrimination in Violation of
*Title VII of the Civil Rights Act and*
*Age Discrimination in Employment Act*

62.  All other allegations of this pleading are incorporated here by reference.

63.  Title VII prohibits federal agencies from discriminating against any of their employees on account of race or gender.

14

64.     The ADEA prohibits an employer from discriminating against any of its employees on account of age.

65.     Defendant discriminated against Plaintiff because of his race, his gender, and his age when it failed to select him for promotion while selecting persons outside of his protected classes, and by subjecting him to the other adverse actions described in this complaint.

**COUNT II – Retaliation in Violation of**
*Title VII of the Civil Rights Act and*
*The Age Discrimination in Employment Act*

66.     All other allegations of this pleading are incorporated here by reference.

67.     Title VII and the ADEA also prohibit federal agencies from retaliating against any of their employees because the employee has opposed an unlawful discriminatory practice, or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the law.

68.     Plaintiff engaged in protected activity when he commenced and participated in the official proceedings of his administrative EEO complaints.

69.     Defendant's officials have been aware of Plaintiff's protected activities.

70.     Defendant engaged in unlawful reprisal when it subjected Hendricks to discipline, adverse performance ratings, a hostile work environment and other adverse treatment because he engaged in protected activities.

71.     Based on the above, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 633a, *et seq.*

72.     As a direct and proximate result of Defendant's conduct as set forth, Plaintiff has suffered damages and is entitled to retroactive promotion, back pay including loss of benefits, actual and compensatory damages, and attorney fees.

## PRAYER FOR RELIEF

Hendricks seeks the following relief:

A.     A declaration that the acts and practices described in this complaint are unlawful in violation of Title VII and the ADEA;

B.     Injunctive relief, including but not limited to instatement or front pay, expungement, and other relief to restore him as nearly as possible to the position he would have held had the prohibited personnel practices not occurred;

C.     Equitable relief to ensure that Defendant's workplaces are free from unlawful discrimination and retaliation by directing Defendant to take such affirmative action as is necessary to ensure that the effects of those unlawful employment practices are eliminated and do not continue;

D.     Back pay, including but not limited to lost wages and retirement benefits, the amount of tax on the verdict, plus interest and related benefits, travel expenses, and any other reasonable and foreseeable consequential damages;

E.     Compensatory damages of $300,000.00, or such other amount as is awarded by a court, for his humiliation, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, loss of reputation and other nonpecuniary losses.

F.     Costs of this action, including reasonable attorneys' fees, court costs, witness fees and other expenses;

G.     Such other and further relief this Court finds just and proper.

16

Respectfully submitted,

Date: May 9, 2022                      /s/ Richard R. Renner
                                       Richard R. Renner, rrenner@kcnlaw.com
                                       Bar No. OH0021
                                       Kalijarvi, Chuzi, Newman & Fitch, P.C.
                                       818 Connecticut Ave. NW; Suite 1000
                                       Washington, DC  20006
                                       (202) 331-9260 office
                                       1-877-527-0446 fax
                                       *Attorney for Plaintiff*

17